IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CR-026-JHP |
| | ) | |
| MELVIN LOUIS BAILEY, JR., a/k/a | ) | |
| "Ojo," | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Before the Court are both the Government and Defendant Melvin Louis Bailey Jr.'s Objections (Docket Nos. 35, 37) to the Report and Recommendation (Docket No. 33) of United States Magistrate Judge Paul J. Cleary regarding Defendant Melvin Louis Bailey Jr.'s Motion to Suppress (Docket No. 15).

## BACKGROUND

This matter was initially referred to the Magistrate Judge on March 17, 2008, pursuant to Fed. R. Crim. P. 59(b)(1) and 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge conducted a hearing on March 25, 2008, and April 17, 2008. On May 16, 2008, the Magistrate Judge issued his Report and Recommendation, recommending that Bailey's Motion to Suppress be denied.

On May 23, 2008, Bailey filed objections to the Magistrate Judge's Report and Recommendation. Bailey makes five specific objections: (1) he objects to the Magistrate's finding that "the description of the location to be searched is sufficient"; (2) he objects to the "manner that the Magistrate addressed the issue of the wrong date appearing on the Warrant"; (3) he objects to

1

the finding that the testimony of the named informant, Felicia Witherspoon, was "implausible"; (4) he objects to the Magistrate's ultimate finding that the search warrant was valid; and (5) he complains about the Magistrate's failure to address the Tulsa Police Department's alleged failure to comply with a *supboena duces tecum* for certain records that Defendant argues would have "shed some light on the lingering issues which were raised during the hearing."

On May 27, 2008, the Government filed a single objection to the Magistrate Judge's Report and Recommendation. The Government objects to the Magistrate's determination that an encounter between Tulsa Police Department officers and Bailey in the parking lot of a convenience store at 205 Mohawk Boulevard was an unjustified, non-consensual encounter. Based on that determination, the Magistrate struck any reference to that encounter from the affidavit supporting the search warrant for Bailey's house, and did not consider those references in making his probable cause determination. The Government argues that the evidence from the suppression hearing establishes that the encounter was consensual and that the evidence from the encounter should therefore be considered for purposes of the probable cause determination.

## DISCUSSION

A.     **The Description of the House**

Bailey argues that the search warrant authorizing the search of his house is deficient because the description of his house is partially inaccurate:

> THE STRUCTURE TO BE SEARCHED IS A SINGLE STORY RESIDENCE LOCATED ONE-HOUSE NORTH OF EAST XYLER STREET NORTH, ON THE WEST SIDE OF NORTH BOSTON PLACE. THE RESIDNECE [SIC] TO BE SEARCHED HAS A SLOPED BROWN COMPOSITION SHINGLE ROOF. THE RESIDENCE IS CONSTRUCTED OF BRICK PAINTED TAN. THE RESIDENCE TO BE SEARCHED HAD NO VISABLE [SIC] HOUSE NUMBERS ON THE EAST SIDE OF THE RESIDENCE. THE FRONT DOOR IS ON THE EAST SIDE OF THE HOUSE AND FACES EAST. A GLASS STORM DOOR SHROUDS THE

2

FRONT DOOR. THIS ADDRESS IS MORE COMMONLY KNOWN AS 2304 NORTH BOSTON PLACE, CITY AND COUNTY OF TULSA, STATE OF OKLAHOMA.

(Docket No. 15-2 at 1). Evidence at the suppression hearing established that the house is not tan painted brick, but rather tan stucco. Evidence at the hearing also established that instead of a "sloped brown composition shingle roof," the house actually has a sloped grey/tan composition roof that is edged with brown trim. Additionally, the door shrouding the front door is not a simple "glass storm door," it instead is a "security" door with either plexiglass or glass intersected by metal bars.

Having examined the Magistrate's findings and conclusions, the Court is satisfied that the Magistrate applied the correct legal standard to the facts, and the Court agrees with the Magistrate's conclusion that there was not a reasonable probability that another house might be searched. The search warrant described the proper street address for the house, accurately described the house's location in relation to cross streets and other houses, accurately described the direction the house faced, and accurately noted the lack of visible street numbers on the front of the house. Even the portions of the description that Bailey complains are deficient are partially accurate.

Therefore, on these facts, the Court agrees with the Magistrate's findings and conclusion and overrules Bailey's objection to this portion of the Report and Recommendation.

**B.**     **The Incorrect Date on the Warrant**

The search warrant in this case was issued on November 26, 2008, however, the warrant is actually dated November 26, 2006. In his Report and Recommendation, the Magistrate noted in a footnote that the officer who prepared the affidavit and warrant testified that the typed "2006" on the form was accidentally carried over from a previous form.

Bailey argues that the Magistrate's treatment of this issue in a footnote is inadequate, as it

fails to make a finding that the warrant was facially valid or invalid as a result of the typographical error.

To the extent that the Magistrate failed to make a finding on this issue, the Court finds that the officer's testimony regarding this typographical error was credible, and further finds that the officers executing the warrant relied on the incorrectly dated warrant in good-faith. The Court further finds that this error does not render the warrant invalid. *See United States v. White,* 356 F.3d 865, 869 (8th Cir. 2004)(holding that so long as executing officers relied on mis-dated warrant in good-faith, they should not be punished for the an oversight made by the authorizing judge, who bears the ultimate responsibility for ensuring the accuracy of the warrant).

**C.      The Credibility of Felicia Witherspoon's Testimony**

Bailey objects to the Magistrate's finding that Felicia Witherspoon, the informant named in the affidavit supporting the search warrant, gave "implausible" testimony at the suppression hearing when she testified that she had never spoken to the Tulsa Police Department officer who named her as an informant in the affidavit in support of the search warrant for Bailey's house. Bailey only objects to this credibility determination made by the Magistrate, instead urging the Court to find her testimony at the hearing credible.

The Court has reviewed Witherspoon's testimony and agrees with the Magistrate that Witherspoon's testimony at the hearing lacked credibility. The Court therefore finds that Witherspoon did in fact speak to Officers Muse and Snow as described in the affidavit, and finds that her subsequent denial of that conversation is implausible. While certain inconsistencies between the information in the affidavit accompanying the search warrant and the testimony heard at the suppression hearing do exist, Witherspoon—who will likely be labeled a "snitch" on the street  for

cooperating with police—plainly has a motive for denying her cooperation with police. Additionally, to believe Witherspoon's testimony that she never spoke to the Tulsa police officers who named her in the affidavit is to believe that those officers completely fabricated their encounter with Witherspoon, something that is implausible given the fact that much of the information contained in the affidavit, and which the Tulsa police officers claim they gleaned from the encounter with Witherspoon, has proven to be accurate.

Therefore, the Court thus finds no reason to disagree with the Magistrate Judge's conclusion that Witherspoon's testimony at the suppression hearing lacked credibility.

**D.     The Magistrate's Failure to Address the Tulsa Police Department's Failure to Comply with a *Subpoena Duces Tecum***

As part of his previous objection, Bailey complains that the "Tulsa Police Department utterly disregarded [a] *subpoena duces tecum* — served 7 days before the hearing resumed — without any explanation whatsoever. The issue was not addressed in the R & R, but should have been[.]"

A review of the audio from the suppression hearing shows that Bailey's attorney raised this issue near the conclusion of the hearing on April 17, 2008, and informed the Court that he needed to contact the Tulsa Police Department to inquire as to why the records he was seeking had not been produced. After a discussion in which the Magistrate expressed his frustration over the fact this issue had not been resolved *prior* to the hearing — particularly considering the fact the hearing had already been continued from March 25th to April 17th so that a necessary witness could testify, the Magistrate informed the parties that he was closing the evidentiary record. The Magistrate informed Bailey's attorney that should he acquire the records in question and find them to be relevant, Bailey should brings those records to the district court's attention so that the district court could consider those records in its review of the Magistrate's Report and Recommendation.

5

Bailey now simply continues to argue that the records have not been produced. Bailey does not indicate that after the conclusion of the suppression hearing he did in fact contact the Tulsa Police Department to check on the status of the subpoena. And a review of the docket reflects that no motion to compel compliance with the subpoena was ever filed by Bailey. It appears as though Bailey complains of a discovery abuse, but Bailey has apparently made no effort to utilize the discovery tools made available to him by Rule 16 of the Federal Rules of Criminal Procedure in order to resolve this issue. This Court can therefore find no error in the Magistrate's decision to close the evidentiary record at the conclusion of the suppression hearing. Indeed, Bailey had from April 17th to May 23rd—the date Bailey filed his objections to the Report and Recommendation—to seek production of those records so that they could be provided to this Court, but Bailey has seemingly failed to do so.

Therefore, Bailey's claim that the Magistrate erred by failing to address the issue in his Report and Recommendation is simply without merit. The Magistrate addressed the issue at the suppression hearing; if, after the conclusion of the suppression hearing, Bailey had brought any matters to the Court's attention regarding this discovery dispute, those matters would have been addressed in an appropriate order. The Magistrate's Report and Recommendation ruling on the motion to suppress, however, was not the proper vehicle for adjudication of any issues surrounding this discovery dispute.

**E.      The Validity of the Search Warrant**

Bailey's final objection is to the Magistrate's ultimate conclusion that the search warrant in this case was valid. In the Report and Recommendation, the Magistrate concluded that, even omitting from the affidavit accompanying the search warrant the references to Bailey's encounter

with the police at 205 Mohawk Boulevard, as well as Officer Muse's statement that he had observed Bailey letting people into his house through the front door, the search warrant was supported by probable cause.[1]

The Court agrees. The Magistrate applied the correct legal standards, and based on the Court's overruling of Bailey's other objections, the Court sees no reason to depart from the Magistrate's analysis. The evidence presented at the hearing indicates that the affidavit accompanying the search warrant contains ample corroborated evidence of drug trafficking by Bailey from his house.

Therefore, the Court agrees and adopts the Magistrate's conclusion that under the totality of the circumstances the issuing judge had a substantial basis for determining that probable cause existed.

## F.      The 205 Mohawk Boulevard Encounter

The Government objects to the Magistrate's finding that the encounter between Bailey and Tulsa Police Department officers which occurred in the parking lot of a convenience store at 205 Mohawk Boulevard was unjustified, and non-consensual. Based on that finding, the Magistrate purged any reference to, or evidence obtained from, that encounter from the affidavit accompanying the search warrant and made his probable cause determination based on that purged affidavit. The Government argues that the encounter was consensual, and therefore the evidence obtained from that encounter should not have been purged from the affidavit.

The Magistrate made the following factual findings with regard to this encounter:

---

[1]Although this Court ultimately disagrees with a portion of the Magistrate's Report and Recommendation regarding the encounter at 205 Mohawk Boulevard, the Court, like the Magistrate, does not consider that encounter in making this probable cause determination. If that encounter were considered, the probable cause determination would, of course, be even more in the Government's favor.

Having weighed the evidence and the credibility of the witnesses, the Court makes the following findings. Four uniformed officers in separate cars with their lights and sirens on approached 4-6 men who were congregated around the retaining wall between the house that Bailey was measuring for a new roof and the parking lot. The officers told the men to sit on the retaining wall, to remove their shoes and socks, and to remain there until they were allowed to leave by the officers. When Muse asked Bailey if he had any weapons on him; Bailey said no. Muse then told him to turn around so he could check him for weapons. Muse restrained both of Bailey's hands, while he patted Bailey down. Muse felt a bulge in Bailey's back pocket and asked him what it was. Bailey responded that it was his wallet. Muse testified that it seemed too big for a wallet and so he pulled out the wallet and went through it; he found $4500 in cash in the wallet. Muse then asked if the black Lexus belonged to Bailey and if there were any weapons or explosives in the car. Bailey said no and Muse asked if they could search the car. Bailey said yes and Muse told Snow to look in the vehicle. Snow found a diagram of a hidden compartment to be placed in the bed of a pickup truck on the floorboard of the car. Neither the diagram nor the $4500 in currency was confiscated. The encounter lasted approximately 15-20 minutes.

(Docket No. 33, at 11-12).

Having reviewed the audio recordings of Officers Muse, Officer Snow, and Thomas Mahan's testimony at the suppression hearing, the Court makes the following factual findings, and vacates the Magistrate's factual findings to the extent they are inconsistent: Four uniformed officers in separate cars with their lights and sirens on approached 4-6 men who were congregated in the parking lot of a convenience store adjacent to a house that Bailey was measuring for a new roof. The officers told the men  in the parking lot to sit on the retaining wall, to remove their shoes and socks, and to remain there until they were allowed to leave by the officers. Bailey — whom Officer Muse initially did not realize was present — approached Officer Muse and asked him why the officers were bothering the men in the parking lot. Officer Muse immediately asked Bailey if he had any weapons on him; Bailey said no, and told Officer Muse that he was free to check. Officer Muse had Bailey turn around and patted Bailey down. As was his custom, Officer Muse held onto Bailey's hands while conducting the patdown. While patting Bailey down, Officer Muse felt a bulge in

8

Bailey's back pocket and asked him what it was. Bailey responded that it was his wallet. Officer Muse remarked that it seemed too big to be a wallet. Officer Muse pulled out the object and discovered that it was indeed a wallet containing $4,500 in cash. Officer Muse then asked Bailey if a black Lexus parked nearby was his. When Bailey indicated it was his car, Officer Muse asked if there were any weapons or explosives in the car. Bailey said no and Officer Muse asked if they could search the car. Bailey said yes, and Officer Snow proceeded to search the car. In the floorboard of the car, Officer Snow found a diagram showing how to place a hidden compartment in the bed of a pickup truck. Neither the diagram nor the $4,500 in currency was confiscated, and Bailey went on his way. The encounter lasted approximately 15-20 minutes.

Based on these factual findings, the Court finds that Bailey's encounter with the police was consensual, and that Bailey was at no time seized by the police. Under the totality of the circumstances, nothing about the police officers' conduct in interacting with Bailey would have "communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). Indeed, Bailey's interaction with the police was initiated by Bailey himself. Having initiated the encounter, there is no reason to believe that Bailey did not feel free to terminate the encounter. *See id.* at 434 ("So long as a reasonable person would feel free to disregard the police and go about his business the encounter is consensual and no reasonable suspicion is required.")(internal quotation omitted). All the evidence presented tends to show that the encounter was generally friendly, and amounted to nothing more than Bailey asking Officer Muse questions, and Officer Muse asking Bailey questions. *See Florida v. Royer*, 460 U.S. 491 (1983) (plurality opinion) ("Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in

9

another public place, by asking him if he is willing to answer some questions, [and] by putting questions to him if the person is willing to listen").

The Court additionally finds that Bailey freely consented to Officer Muse's search of his person for weapons. The government has proffered "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir.1995) (citations omitted). Furthermore, considering the consensual nature of the encounter, the Government has proven that Bailey's consent was given without implied or express duress or coercion. *Id.* Officer Muse provided uncontested testimony at the suppression hearing that when Officer Muse asked Bailey if he had any weapons, Bailey said no, and told Officer Muse that he was free to check. It was only then that Officer Muse patted Bailey down and discovered the wallet. Therefore, the Court finds that Bailey unequivocally, specifically, freely, and intelligently consented to a search of his person for weapons.

Officer Muse did not exceed the scope of this consent when he removed Bailey's wallet to confirm it was not a weapon. Officer Muse testified that although Bailey told him the object in his pocket was a wallet, Officer Muse was not convinced because the object felt much too large to be a wallet. Officer Muse was therefore justified in removing the object to confirm that it was not a weapon — particularly in light of the fact Officer Muse felt Bailey was being untruthful when he said the object was a wallet.

Officer Muse, however, exceeded the scope of the consent when—after verifying the wallet was indeed a wallet—he opened the wallet to examine its contents. Once Officer Muse had confirmed that the wallet was not a weapon, he should have returned the wallet, as Bailey had only consented to a search of his person for weapons.

10

Therefore, the Court disagrees with a portion of the Magistrate Judge's factual findings, his conclusion that Bailey had been seized, and his conclusion that Bailey had not consented to a search of his person. However, because the Court finds that Officer Muse exceeded the scope of the consent that Bailey did give, the Court looks to whether reasonable suspicion of illegal activity existed which would justify Officer Muse's search of Bailey's wallet. Here, the Court finds no reason to depart from the Magistrate Judge's analysis and conclusion on this point.[2] The Court agrees and adopts the Magistrate Judge's conclusion that, absent consent, the search of Bailey's wallet was unjustified. Therefore, any evidence regarding the $4,500 must be suppressed.

The Court next turns to the search of Bailey's car. When a consensual search is preceded by a Fourth Amendment violation, as in this case, the government must prove not only the voluntariness of the consent to search, but also the existence of a break in the causal connection between the illegality and the evidence thereby obtained. *U.S. v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir. 1994)(internal citations omitted)(quotations omitted). Here, Bailey plainly consented to a search of his car for weapons, and Officer Snow did not exceed the scope of this consent in discovering the diagram laying on the floorboard of the car. The only question, therefore, is whether the otherwise consensual search of the car was an "exploitation" of the prior illegal search of Bailey's wallet. *Id.* at 1054-1055 (quoting LaFave, 3 Search and Seizure § 8.2(d) at 190).

The Supreme Court has provided three factors that are especially relevant to determining whether a consent is tainted by a preceding illegal search or seizure: (1) the temporal proximity between the police illegality and the consent to search; (2) the presence of intervening

---

[2]The Court also notes that the search of the wallet may very well have to have been supported by probable cause. However, because the search was not supported by even reasonable suspicion, the Court does not reach that issue.

circumstances; and particularly (3) the purpose and flagrancy of the official misconduct. *Id.* at 1054 (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975); *United States v. Recalde*, 761 F.2d 1448, 1458 (10th Cir.1985). Here, the illegal search of the wallet and the subsequent consensual search of the car occurred very close in time and without intervening circumstances. The Court finds, however, that the purpose and flagrancy of the illegal search of Bailey's wallet does not rise to a level that would necessitate suppression of the evidence subsequently found in Bailey's car. As the Court has previously concluded, the illegal search was the search of Bailey's wallet. In light of the fact that Bailey consented to the search of his person, and the fact that Officer Muse was justified in removing Bailey's wallet to confirm it was not a weapon, the Court cannot conclude that Officer Muse's mere act of examining the contents of the wallet was so "egregious" as to taint the subsequent search of the car. Additionally, no suggestion has been made that Officer Muse requested consent to search Bailey's car for weapons or explosives because of the discovery of the $4,500 in Bailey's wallet. To the contrary, the record shows that Officer Muse, wanting to know if a Bailey had a weapom on his person, wanted to also find out if Bailey had a weapon in his nearby car. On this record, despite the temporal proximity and lack of intervening circumstances, the Court cannot conclude that the search of the car was either causally connected to, or in any way an exploitation of, the prior illegal search of Bailey's wallet.

Therefore, the Court finds that the evidence gleaned from the search of Bailey's car need not be suppressed, as nothing about this search violated the Fourth Amendment. As noted previously, however, the evidence obtained from the search of Bailey's wallet must be suppressed, as that search violated the Fourth Amendment.

## **CONCLUSION**

Because Defendant's objections fail to raise any new issues of law or fact that alter the viability of the Magistrate Judge's Report and Recommendations, the Court finds Defendant's objections to be without merit. The Government's objection, however, correctly noted that the Magistrate's factual findings regarding the 205 Mohawk Boulevard encounter are not consistent with the record before the Court. Therefore, after carefully reviewing both the Report and Recommendation and the record in this case, and having listened to a recording of the hearing in this matter, the Court concludes that — other than certain portions dealing with the 205 Mohawk Boulevard encounter — the Magistrate Judge's factual findings are supported by the record, and his Report and Recommendation correctly applies applicable law to the facts of this case in a thorough and well reasoned manner.  Accordingly, the Court makes its own factual findings and conclusions of law as to the 205 Mohawk Boulevard encounter — but otherwise adopts the Report and Recommendation as the findings and order of this Court.

For the reasons stated in the Report and Recommendation and set forth above, Defendant Melvin Louis Bailey Jr.'s Objections (Docket No. 35) to the Report and Recommendation are OVERRULED. The Government's Objection (Docket No. 37) to the Report and Recommendation is SUSTAINED in part, and OVERRULED in part. Defendant's Motion to Suppress (Docket No. 15) is therefore DENIED in part, and GRANTED in part.

IT IS SO ORDERED

James H. Payne
United States District Judge
Northern District of Oklahoma

13