IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CR-026-JHP |
| | ) | |
| MELVIN LOUIS BAILEY, JR., a/k/a | ) | |
| "Ojo," | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED ORDER AND OPINION

Before the Court is Defendant Melvin Louis Bailey Jr.'s Motion to Suppress 404(b) Evidence (Docket No. 54). For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

Defendant Melvin Louis Bailey Jr. has filed the instant motion to suppress seeking to suppress evidence the Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Bailey argues that the evidence — a small plastic bag of cocaine and currency which was found during a traffic stop — was obtained through a search of his person that violated the Fourth Amendment. The Government argues that the search was justified, and permissible; and even if it was not, the evidence would have been inevitably discovered.

An evidentiary hearing on the matter was held June 23, 2008. The Court heard testimony from Oklahoma Highway Patrol Trooper Stan Rodenbeck. Based on that testimony, the Court makes the following factual findings: On December 14, 2007, Bailey was a passenger in a vehicle driven by Elgin Scott. Trooper Rodenbeck noticed that Scott's vehicle did not have a tag visibly displayed

1

in the rear of the vehicle as required by Oklahoma law.[1] Trooper Rodenbeck stopped the vehicle, and approached the vehicle to speak with Scott. Trooper Rodenbeck had Scott exit the vehicle and stand near the rear of the vehicle. Scott was unusually nervous when questioned about his travel itinery. Trooper Rodenbeck testified that Scott had an elevated heart rate — discernable from Scott's pulsing carotid artery — and was overly talkative, at times talking to himself, whistling, and punctuating his words with hand gestures. Trooper Rodenbeck testified that based on his extensive training in detecting evasiveness and untruthfulness, and based on his years of experience interacting with citizens during traffic stops, he believed Scott was being untruthful.

After Scott was unable produce his insurance verification form, Trooper Rodenbeck approached the passenger side window of the vehicle where Bailey was sitting. Trooper Rodenbeck asked Bailey to find the insurance verification form for the vehicle. Bailey was also unusually nervous. Trooper Rodenbeck testified that Bailey was "very confused in his movements," distracted, nervous, had an elevated heart rate, and would not make eye contact with Trooper Rodenbeck. Trooper Rodenbeck also asked Bailey if he had any identification. Bailey told Trooper Rodenbeck that he did not have any identification, so Trooper Rodenbeck asked him his name and date of birth. Bailey hesitated, then gave Trooper Rodenbeck a name and date of birth that Trooper Rodenbeck later determined were both false.

Trooper Rodenbeck returned to his patrol unit and radioed in Scott's name, and the name Bailey had given him, to the Oklahoma Highway Patrol dispatcher. The dispatcher was able to verify Scott's identification but was unable to locate information on anyone by the name Bailey had given. Trooper Rodenbeck testified that it concerned him that he was unable to verify Bailey's identity.

---

[1] Scott's tag was displayed in the rear window, but was not visible because of dark window tinting.

Trooper Rodenbeck testified that at this point he was concerned that Scott and Bailey were engaged in some sort of criminal activity.

Trooper Rodenbeck issued Scott a warning for the improperly displayed tag, returned his driver's license and other documents, and released him to leave the scene. After Scott had exited the patrol unit and started walking back to his own vehicle, Trooper Rodenbeck exited the patrol unit and asked Scott if he could ask him a few more questions. After Scott agreed, Rodenbeck explained his suspicions to Scott and questioned him about contraband in the car. Scott denied having any such contraband and consented to a search of the car and its contents.

Before searching the vehicle, Trooper Rodenbeck removed Bailey from the vehicle, and asked him the same questions he had asked Scott. Trooper Rodenbeck then conducted an "officer safety patdown" of Bailey so that Trooper Rodenbeck could safely place him in the patrol unit with Scott while Trooper Rodenbeck was searching Scott's vehicle. Trooper Rodenbeck placed Bailey against Scott's car and patted him down. Trooper Rodenbeck felt a soft "bulge" in Bailey's front jeans pocket. Trooper Rodenbeck thought the bulge felt like paper currency and a wadded up plastic bag. Trooper Rodenbeck asked Bailey if there was money in his pocket and Bailey confirmed that he had some paper currency in his pocket.[2] Trooper Rodenbeck then removed the contents of the pocket and discovered a large quantity of currency and a plastic bag containing a small amount of cocaine. Trooper Rodenbeck then placed Bailey in the patrol unit and conducted his search of the

---

[2]Trooper Rodenbeck's testimony on this point was inconsistent. At one point he testified that he was unsure what the bulge in Bailey's pocket was so he asked Bailey what was in his pocket and that Bailey replied that "he didn't know." At another point, Trooper Rodenbeck testified that when he patted the object, he thought it was currency, and when he asked Bailey if it was, Bailey confirmed that fact.

At another point, Trooper Rodenbeck testified that he was concerned the other object in Bailey's pocket (which turned out to be a plastic bag containing 5 grams of rock and powdered cocaine) might be rocks, ball bearings, or brass knuckles. However, Trooper Rodenbeck testified at another point that the bulge was "soft," that it "crinkled" like a plastic bag when patted, and that he could not feel anything in the bag through Bailey's jeans.

vehicle. In the vehicle he found a black leather jacket with $6924 in the pocket.

While Trooper Rodenbeck was searching the vehicle, he received a call from the dispatcher telling him that, after cross-referencing the name and date of birth Bailey had given them in their database, the dispatcher had identified several possible identities for Bailey. The dispatcher informed Trooper Rodenbeck that one possible match — Melvin Louis Bailey Jr. — had an identifying tattoo related to the "Hoover Crips" gang on his chest. Trooper Rodenbeck returned to the patrol unit and asked Scott and Bailey who owned the jacket. Bailey indicated the jacket was his. Trooper Rodenbeck then questioned Bailey about the tattoo and was able to confirm Bailey's true identity. Bailey was then placed under arrest. At some point after Trooper Rodenbeck ascertained Bailey's identity, he determined that Bailey had an outstanding warrant for his arrest.[3]

## DISCUSSION

When examining whether a traffic stop is valid under the Fourth Amendment the Court must first determine whether the police officer had a valid reason for initiating the traffic stop. *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). This initial inquiry involves determining whether the police officer had a reasonable and articulable suspicion that a traffic or equipment violation had occurred or was occurring. *Id*. Second, the Court must determine whether the traffic stop was extended beyond the reasonable duration necessary to accomplish the purpose of the stop. *United States v. Rice*, 483 F.3d 1079, 1083 (10th Cir. 2007). The traffic stop may be extended for questioning unrelated to the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning." *United States v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005).

---

[3]Trooper Rodenbeck never testified as to when he became aware of the warrant for Bailey's arrest.

Here, the evidence at the suppression hearing established that Trooper Rodenbeck had a valid reason for initiating the traffic stop of Scott and Bailey. Trooper Rodenbeck clearly had a reasonable and articulable suspicion that the vehicle did not have a properly displayed tag — a violation of Oklahoma law. The testimony at the suppression also established that the traffic stop took no longer than was reasonably necessary to accomplish the purpose of the stop. The stop was only extended when — after Trooper Rodenbeck had written Scott a warning, returned his driver's license and other documents, told Scott he was free to go, and allowed him to exit the patrol unit — Scott agreed to answer some further questions and consented to a search of his vehicle.

The next inquiry concerns the patdown of Bailey that occurred after Scott had consented to the search of his vehicle. In *Terry v. Ohio*, the Supreme Court recognized that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." 392 U.S. at 24-26. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." *Adams v. Williams*, 407 U.S. 143 (1972). If, however, during the course of a patdown for weapons, an officer "feels an object whose contour or mass makes its identity [as nonthreatening contraband] immediately apparent," the officer may seize that contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

Here, Trooper Rodenbeck's testimony at the suppression hearing established that he had reasonable and articulable suspicion that Scott and Bailey were engaged in illegal activity. Trooper Rodenbeck was therefore justified in patting Bailey down for weapons before placing him in his

patrol unit so that Trooper Rodenbeck could safely search the suspect vehicle. Trooper Rodenbeck testified, however, that his subjective intent in patting Bailey down was to determine whether Bailey was armed or in possession of some other contraband. Trooper Rodenbeck's patdown for weapons was authorized by *Terry*; his patdown for other types of contraband was not. Because a patdown for weapons was permissible, however, Trooper Rodenbeck's overly broad subjective intent does not render his patdown impermissibly intrusive. Therefore, if, when he felt an object in Bailey's pocket he: (a) thought it was — or might be — a weapon and removed it to verify, *see e.g., Unites States v. Harris*, 313 F.3d 1228, 1237 (10th Cir. 2002), or (b) immediately identified the object as illegal contraband, Trooper Rodenbeck's intrusion into Bailey's pocket would be permissible. Trooper Rodenbeck's testimony, however, established neither. He testified that he felt a "bulge" that felt like money and a plastic bag. Neither of these objects can reasonably be confused with a weapon, and Trooper Rodenbeck's inconsistent testimony belies the Government's contention that Trooper Rodenbeck emptied Bailey's pocket out of concern that it contained a weapon.

The only remaining question is whether Trooper Rodenbeck was able to immediately determine that the plastic bag was contraband. Trooper Rodenbeck made no claim that he was able to make such a determination. He instead testified that, in his experience, plastic bags are often drug paraphernalia, but he did not testify that he was able to, upon patting it, immediately identify the object in Bailey's pocket as contraband. Therefore, Trooper Rodenbeck exceeded the limited scope of a *Terry* patdown for weapons and was not justified in emptying the contents of Bailey's pocket.

The Government argues, however, that the drugs in Bailey's pocket would have been inevitably discovered once Trooper Rodenbeck identified Bailey and became aware that Bailey had outstanding warrants for his arrest. "The inevitable discovery doctrine provides an exception to the

exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Martinez*, 512 F.3d 1268, 1273 (10th Cir. 2008)(quoting *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir.2005)). The burden rests on the government to prove "by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation." *Id.*

In this case, if the record before the court were to establish that Trooper Rodenbeck became aware that Bailey had an outstanding arrest warrant at some point prior to the conclusion of the consensual encounter involving the search of Scott's vehicle, the Court would agree that the inevitable discovery doctrine would apply. If that were the case, Bailey would have been arrested regardless of the cocaine found in his pocket, and once arrested, Trooper Rodenbeck would be permitted to conduct a lawful search incident to arrest — which would have inevitably resulted in the discovery of the cocaine. However, Trooper Rodenbeck never testified as to when he became aware of the warrant for Bailey's arrest. Trooper Rodenbeck instead simply testified that while he was conducting the consensual search of Scott's vehicle, the dispatcher radioed him and informed him that a possible identity of Bailey had been ascertained.[4] If the information regarding the warrant for Bailey's arrest did not become known to Trooper Rodenbeck until after the point in time where, but for the illegal search of Bailey's person, Scott and Bailey would have been on their way, the inevitable discovery doctrine would not apply. Because of this lack of clarity in the record, the Court

---

[4] While Trooper Rodenbeck presumably radioed his dispatcher to determine whether Scott and Bailey had any outstanding warrants, the mere fact that the dispatcher radioed Trooper Rodenbeck with a possible identity of Bailey does not lead to the conclusion that Trooper Rodenbeck was informed of the warrant at that time. For example, the dispatcher initially returned information on Scott to Trooper Rodenbeck, and there was no testimony suggesting that Scott had any outstanding warrants. Therefore, the Court cannot assume that the dispatcher's second radio call to Trooper Rodenbeck regarding Bailey's identity also informed Trooper Rodenbeck of Bailey's outstanding warrant.

simply cannot apply the inevitable discovery doctrine to the facts before it.

Therefore, the Government has failed to meet its burden of proving by a preponderance of the evidence that the cocaine in Bailey's pocket would have been discovered independent of the unlawful search of Bailey's pocket.

## **CONCLUSION**

For the reasons set forth above, Defendant Melvin Louis Bailey Jr.'s Motion to Suppress 404(b) Evidence (Docket No. 54) is GRANTED.

IT IS SO ORDERED this 24th day of June 2008.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma